```
                  IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION

                                      )
VALERIE THOMAS,                       )
                                      )   Case No. 21 CV 1948
            Plaintiff,                )
                                      )
       vs.                            )
                                      )   Chicago, Illinois
LVNV FUNDING, LLC and                 )   May 12, 2023
RESURGENT CAPITAL SERVICES,           )   1:30 PM
L.P.,                                 )
                                      )
            Defendants.               )

          TRANSCRIPT OF PROCEEDINGS - Pretrial Conference
              BEFORE THE HONORABLE ELAINE E. BUCKLO

APPEARANCES:

For the Plaintiff:      GREAT LAKES CONSUMER LAW FIRM, LLC
                        BY:  MR. SETH B. MCCORMICK
                        73 West Monroe Street
                        Suite 100
                        Chicago, Illinois  60603

For the Defendant:      BARRON & NEWBURGER PC
                        BY:  MR. NABIL G. FOSTER
                        53 West Jackson Boulevard
                        Suite 1205
                        Chicago, Illinois  60604

                        -and-

                        BARRON & NEWBURGER
                        BY:  MS. ALYSSA A. JOHNSON
                        333 West Brown Deer Road
                        Unit G-365
                        Milwaukee, Wisconsin 53217


Court Reporter:         SANDRA M. TENNIS, CSR, RMR, FCRR
                        Official Court Reporter
                        219 S. Dearborn Street, Room 2260
                        Chicago, Illinois  60604
                        (312) 554-8244
                        sandra_tennis@ilnd.uscourts.gov
```

1  (Proceedings heard in open court:)
2  THE COURT: I guess you better introduce yourselves
3  first.
4  MR. FOSTER: My name is Nabil Foster for the
5  defendants.
6  THE COURT: Okay.
7  MS. JOHNSON: Alyssa Johnson for the defendants also.
8  THE COURT: Good afternoon.
9  MR. MCCORMICK: Seth McCormick for the plaintiff.
10  THE COURT: Good afternoon.
11  All right. Let's begin by talking about the motions
12  in limine. And I want to start with the claim for actual
13  damages. I really don't understand what you're claiming, or
14  where you've said that you're claiming it, or what amount.
15  MR. MCCORMICK: We haven't given an exact dollar
16  amount because it is based on the increased cost of credit and
17  then the increased cost of insurance related to her insurance
18  policy that was -- so what happened was during the time period
19  where the false -- where the false credit reporting was in
20  place, her general insurance, her insurance company, pulled her
21  credit, and then they increased cost of her credit for the next
22  year's policy. So that's -- that's -- it's that, and then
23  also, I mean, you know, you've had -- you've got several --
24  you've got, what, five institutions who have pulled her credit
25  during that time -- during that one month window where the

1   credit reporting was --
2           THE COURT: During that one month time she applied
3   for five credit cards?
4           MR. MCCORMICK: No. They were soft pulls. But the
5   soft pulls -- I mean, one of the pulls was from TransUnion, and
6   then TransUnion didn't pull it again for a year. So based on
7   their false reporting, anybody who pulled her credit subsequent
8   to that, right, if they pulled it through TransUnion,
9   Transunion's opinion of her credit based on its pull from --
10  well, I'm screwing everything up. I'm sorry.
11          So TransUnion is the company they reported to.
12  During that time period, Experian pulled their credit. Okay?
13  And then Experian didn't pull their credit again for another
14  year. So anytime that she applied for credit or someone pulled
15  her credit report from Experian or TransUnion -- from Experian
16  during that period of the year, Experian's report of her credit
17  would be colored by the TransUnion report, which was false.
18          THE COURT: Well, do you know that anybody did?
19          MR. MCCORMICK: Yes.
20          THE COURT: That she was actually denied credit
21  because of this 29 day thing?
22          MR. MCCORMICK: She didn't have -- she does have some
23  adverse action notices, but they're subsequent -- they're later
24  in time. And we -- and we produced those. So we -- but it
25  didn't -- I mean, it didn't happen immediately after. So, I

1  mean, they can't be the only thing that would probably color
2  her credit, but it played a part in it.
3          THE COURT:  How do you know?  Did you depose these
4  companies and find out that they said that's why?
5          MR. MCCORMICK:  No, we did not.  But we do know
6  that -- we do have an actual dollar amount related to the
7  increased cost of her insurance.
8          THE COURT:  And did you ask the insurance company
9  whether this was the reason that they increased it?
10         MR. MCCORMICK:  No, we did not.
11         THE COURT:  Well, I mean, there has to be a proof of
12 causation.
13         MR. MCCORMICK:  Well, I think the increased cost of
14 premium is an indicator that at least the pulling of the credit
15 influenced it.
16         THE COURT:  How do you know?  What kind of insurance,
17 anyway?
18         MR. MCCORMICK:  It was her general homeowner's -- or
19 her rental -- rental insurance and car insurance.
20         THE COURT:  And how much did it go up?
21         MR. MCCORMICK:  $50.
22         THE COURT:  And you're just surmising that it must
23 have been because of this happening, this 29-day period?
24         MR. MCCORMICK:  We did not contact the insurance
25 company and ask them directly if the reason that it was raised

|   |   |
|---|---|
| 1 | was because of the credit pull. |
| 2 | THE COURT:  So how much are you seeking in actual |
| 3 | damages? |
| 4 | MR. MCCORMICK:  Well, we were seeking the $50 over |
| 5 | the course of the year. |
| 6 | THE COURT:  $50? |
| 7 | MR. MCCORMICK:  $50 per month over a year. |
| 8 | THE COURT:  That's what you're seeking in actual |
| 9 | damages? |
| 10 | MR. MCCORMICK:  Correct. |
| 11 | THE COURT:  Have you told them that? |
| 12 | MR. MCCORMICK:  Yes.  I mean, we talked about it at |
| 13 | that settlement conference. |
| 14 | THE COURT:  So that's -- |
| 15 | MR. FOSTER:  That's a no. |
| 16 | THE COURT:  -- $600? |
| 17 | MR. FOSTER:  Yeah, I suppose it was.  That's 50 times |
| 18 | 12, you're saying? |
| 19 | MR. MCCORMICK:  Yeah. |
| 20 | MR. FOSTER:  Twelve?  I guess that's -- that's the |
| 21 | math.  I'm not great at math on the fly, but going up to the |
| 22 | chalkboard in math class always frightened me. |
| 23 | Oh, sorry that's on the record; isn't it? |
| 24 | THE COURT:  So you're seeking a thousand dollars in |
| 25 | statutory damages plus $600? |

| | |
|---|---|
| 1 | MR. MCCORMICK: That's correct. |
| 2 | THE COURT: Will you pay that? |
| 3 | MR. FOSTER: I don't have any settlement authority. |
| 4 | I mean, I could -- we -- we made an offer along the lines of |
| 5 | that in the settlement conference, and it was -- that was |
| 6 | flatly rejected. That was -- the offer we made I think was |
| 7 | more than that amount there. Do you want me to ask my client? |
| 8 | THE COURT: Yes. |
| 9 | MR. FOSTER: Okay. |
| 10 | THE COURT: Now. |
| 11 | MR. FOSTER: Yes, ma'am. If I may step outside? |
| 12 | THE COURT: Yes, go ahead. |
| 13 | MR. FOSTER: $1,600? |
| 14 | THE COURT: Yes. |
| 15 | MR. FOSTER: Or the $600? |
| 16 | THE COURT: 16. |
| 17 | MR. MCCORMICK: $1,600, yeah. |
| 18 | (Brief recess.) |
| 19 | MR. FOSTER: I'm sorry, your Honor. |
| 20 | THE COURT: It's okay. |
| 21 | MR. FOSTER: I was talking and -- talking through |
| 22 | things. |
| 23 | The simple answer is my client is concerned of that, |
| 24 | by agreeing to some sort of -- that opens the door to the tens |
| 25 | of thousands of dollars that the plaintiff's counsel is going |

1  to claim in attorney's fees. And that far out-cliffs the, you
2  know, the alleged damages for which we don't think there is any
3  proof of any causation.
4  　　　　　　THE COURT: Well, I don't look much at the attorney's
5  fee thing, but aren't plaintiffs, if they get any statutory
6  damages, aren't they then entitled to attorney's fees?
7  　　　　　　MR. FOSTER: Reasonable attorney's fees.
8  　　　　　　THE COURT: Okay.
9  　　　　　　MR. FOSTER: Yes, that's -- that's --
10 　　　　　　THE COURT: So are you saying that plaintiff will not
11 recover any statutory damages?
12 　　　　　　MR. FOSTER: I think there is a distinct possibility
13 of that, your Honor.
14 　　　　　　THE COURT: Of there not?
15 　　　　　　MR. FOSTER: Of -- of that -- of no recovery of any
16 damages.
17 　　　　　　THE COURT: So you want to take it to trial on that?
18 　　　　　　MR. FOSTER: Well, okay, not me, but -- but my client
19 is unwilling to settle the case and then -- and then lose the
20 opportunity at being able to challenge the attorney's fee
21 petition.
22 　　　　　　THE COURT: Well, you can still challenge the
23 attorney's fee petition.
24 　　　　　　MR. FOSTER: Yes, but --
25 　　　　　　THE COURT: The reasonableness of.

1  MR. FOSTER: Yes, your Honor.

2  THE COURT: It seems to me that it's going to cost --
3  I don't understand -- it's going to cost so much more of them
4  to go to trial. And I suppose I could say that both ways.

5  Okay. So if you're going to trial, then the -- on
6  statutory damages, the criteria -- plaintiff stated it
7  accurately, let me find it -- are: Nature of violation,
8  frequency and persistence of violation, extent to which a
9  violation was intentional, and the number of violations. So
10 that means on the statutory ones, plaintiff can show -- I don't
11 know, what information do you have about prior times that they
12 have done this, or done things, or been -- I think all that
13 comes in.

14 MR. MCCORMICK: Yeah. I mean, I think the evidence
15 that we have related to statutory damages is far more powerful
16 than anything related to actual damages. So I think the
17 likelihood of us not getting some, at least a dollar in
18 statutory damages, is highly unlikely.

19 THE COURT: What is your evidence of statutory
20 damages?

21 MR. MCCORMICK: Mostly their policies and procedures
22 which are designed to create exactly the mistake that occurred
23 here. That they take -- that they have no communication
24 whatsoever between the people who process the mail and the
25 people who are doing the credit reporting. And it can take up

1  to ten days after -- ten business days after the receipt of a
2  letter for the letter to be fully processed and that
3  information to get to the credit reporting agency, which leaves
4  nearly -- really a two-week gap in terms of business days
5  between the time they prepare a credit report -- you know, by
6  the time they receive a letter and -- there's a -- okay.  They
7  report monthly, and there's two weeks of that month that if
8  they received a letter on the 1st, they're not going to even
9  read it until the 15th, or the credit reporting people aren't
10 going to do it.

11         So they have a system that's designed to violate the
12 FDCPA.  And the fact that it hasn't happened more often could
13 be the fact that they -- you know, that people aren't checking
14 their credit reports on a monthly basis, or people just don't
15 know what their rights are.

16         But, you know, if you have -- if you have two weeks
17 out of the month that allow this mistake to happen, then this
18 is going to happen routinely.

19         THE COURT:  Okay.  I could see a basis for statutory
20 damages on that.  You people couldn't figure this out a long
21 time ago?

22         MR. MCCORMICK:  Are you talking about the parties?  I
23 don't want to speak -- honestly, I have co-counsel in this
24 case, and they are routine filers of FDCPA cases.  And they, I
25 think, serially sue his client, and his client doesn't like my

1  co-counsel.  I don't know -- I don't think it's me, but -- I
2  don't think it's me.  And so they kind of dig in on this, put
3  you through the wringer in order to earn every dollar, I guess,
4  or hope that there's some loophole somewhere that they can
5  wriggle out of it.  That's my understanding.
6              THE COURT:  So we're someplace between zero and a
7  thousand dollars if you decided to pursue this.  Okay, so --
8              MR. FOSTER:  Your Honor, I would say Seth's
9  characterization of the policy and procedures is materially
10 inaccurate in terms of how -- how things function.
11             What's -- what has happened here, and it's part of
12 the stipulation that the parties agreed to, and that is, there
13 was a dispute letter that was -- that was sent as it was -- it
14 was technically received in the mailroom.
15             THE COURT:  Right.
16             MR. FOSTER:  And it was -- it was added to -- it was
17 added to the queue.  But the day it was received, it was
18 received in the mailroom, but no one had actually opened it to
19 read it to process it.
20             The next -- the routine reporting of this case
21 happened literally the next day after the -- after the receipt.
22 And then it wasn't until after the reporting that that letter
23 was then processed later that -- later that same week, such
24 that the dispute was notated, and that at the -- at the next
25 time it was -- the account was reported, which was the next

1  regular monthly, it was correctly reported as -- as disputed.
2  And that's in your summary judgment finding.
3         THE COURT: Right, I know.
4         MR. FOSTER: So my point is that, in terms of the
5  policy of the two-week gap, it's -- I think that's a material
6  misstatement. And it's something that --
7         THE COURT: Well, it's actually a 29-day disparity;
8  right? Or whatever it was.
9         MR. FOSTER: Yes, in terms of, like, it was -- by the
10 next time it was reported, yes. But in terms of the opening of
11 the mail and looking at it, whatever, that's what -- what Seth
12 was referring to in that it was -- it was -- it was identified,
13 it just wasn't -- it just was put into the queue, and it was
14 reported the next time that this was regularly reported.
15        MR. MCCORMICK: I think that there were more than --
16 there was more than a single day. I think there were three
17 days. But that -- I mean, that's something that I don't
18 believe we need to dig into now. There's also --
19        THE COURT: All right. If you guys want to go to
20 trial on this, you can.
21        Now let's talk about the actual damages. If all you
22 know is that her insurance rates went up during that month, I
23 don't think that's enough. And I take it you're no longer
24 claiming the emotional damages?
25        MR. MCCORMICK: We don't -- I mean, no. I mean,

1  there's an emotional component to it.  We have some testimony
2  that she could probably achieve that, but I don't think it's
3  really something that I want to put before a jury.  I'm going
4  to lose -- lose --
5              THE COURT:  Right.  It opens all kinds of doors.
6              MR. MCCORMICK:  Right.
7              THE COURT:  Well, it's nice to know that now.
8              Okay.  I don't think the other's really enough.  I
9  have to say, it doesn't help that -- you know, I looked at your
10 responses and your amended responses and the deposition, and
11 all.  I mean, this might have gotten solved a lot sooner if it
12 had been clear.  And at some point she did say something about
13 the insurance, but I don't think without any indication really
14 that it went up because of this.  I mean, do insurance
15 companies -- this is just regular home insurance or rental
16 insurance?
17             MR. MCCORMICK:  It's rental insurance and car
18 insurance.
19             THE COURT:  Do you even have somebody who can testify
20 that they do raise insurance rates because of something like
21 this, just this in a credit report?
22             MR. MCCORMICK:  No, we don't.  Not -- not in
23 evidence.
24             THE COURT:  And, indeed, it would also bring up the
25 whole issue of other things in her credit report or history,

1  which I know you don't want in there, and except for the actual
2  damages claim, I wouldn't allow in. So I think -- I think
3  we'll just not -- I don't think you've got enough there.
4  　　　　　MR. MCCORMICK: Okay.
5  　　　　　THE COURT: Okay. So we've just got the statutory.
6  　　　　　MR. MCCORMICK: I mean, in an effort to -- and I'm
7  sorry to interrupt. In an effort to streamline things, if
8  you're not going to allow evidence related to actual damages, I
9  would be fine with briefing the statutory damage issue and the
10 attorney's fee issue at the same time and allowing you to make
11 a ruling on it. I don't know if they would agree to that. But
12 that would obviously save resources and time.
13 　　　　　THE COURT: Should we do that?
14 　　　　　MR. FOSTER: All these things are coming all at once
15 now. This is not a possibility even contemplated. So, I mean,
16 I don't have the authority to do that. I've got to ask my
17 client.
18 　　　　　THE COURT: What do you think will solve with the
19 statutory -- do you think I could -- will be able to -- I'm not
20 sure. The attorney's fees, yes, I can decide. The amount of
21 statutory damages, I have to say, I'm not crazy about bringing
22 10 people in for two days to decide whether somebody should get
23 $1 or a thousand dollars, but. Well, if you want to brief it,
24 I'll let you do that.
25 　　　　　So what are you going to claim on the statutory

1  damages?  I mean, I don't know if I have a basis on which I can
2  say as a matter of law you should get this, if that's what
3  they're going to insist on.
4          MR. MCCORMICK:  Well, I mean, as you believe, I think
5  it's -- it's unfortunate that we're in this situation that we
6  haven't come to a resolution.  And it does seem like just a
7  drastic waste of resources to have a jury come in to decide
8  something over a thousand dollars.  But, you know, I mean,
9  essentially, we would -- we would waive our right to a jury
10 trial to allow you to be the factfinder in that situation.
11         THE COURT:  Okay.  And the jury doesn't decide
12 attorney's fees anyway.
13         Will you do that?
14         MR. FOSTER:  Have you be the factfinder for the
15 statutory damages?
16         THE COURT:  Yes.
17         MR. FOSTER:  I have no authority to agree to that,
18 your Honor.  I mean, like I said, this is on the fly, and I
19 want to be as cooperative as possible.  But, you know, we're
20 here, and now we find out that the actual damages claim -- I
21 mean, they're willing to go to trial over, allegedly, $600 of
22 actual damages.  But as your Honor points out, there's no proof
23 of causation.
24         THE COURT:  Right.  Well, you didn't actually make
25 that argument, you made other arguments.  And I looked at those

1  carefully.  That's why I started with this.
2          MR. FOSTER:  Yes.  Well, I mean, it's -- yes.  The
3  issues -- you raise it up so, therefore, now -- now, the
4  landscape is changing.  And so now the reason that we're
5  heading towards a trial, and you decided the liability issue,
6  but then damages you said was a jury issue.  So that's why --
7          THE COURT:  There was a question of fact.
8          MR. MCCORMICK:  It's a fact issue.
9          MR. FOSTER:  Question of fact.  So it's like, okay,
10 so now the question of fact.  Sitting here today, I apologize,
11 I don't have authority from my client to say, yes, we're okay
12 with -- you know, sitting here today what I know from my
13 client, it was a jury trial that's set.  That's all the
14 authority I have to say to go forward with.
15         THE COURT:  Okay.
16         MR. FOSTER:  Had I known this before, I could have
17 had substantive conversations with the client to talk about
18 any -- but, you know, here --
19         THE COURT:  Well, maybe you should do that.  And
20 we'll -- I'll give you another date to come back, or I'll --
21 why don't you see, or see if you can agree on an amount of
22 statutory damages, and we'll just brief the issue of attorney's
23 fees.  I don't -- I mean, certainly if we have to go ahead with
24 a jury trial on the basis of that, then his attorney's fees are
25 certainly going to -- and reasonable attorney's fees, I guess,

Case: 1:21-cv-01948 Document #: 71 Filed: 05/31/23 Page 16 of 16 PageID #:1613

16

1 are going to go up for the time that it takes to go to trial.
2 So maybe you should go talk to your client about that.  And I
3 will schedule -- as I said, I'll schedule another date in two,
4 three weeks, unless we decide that we can do this some other
5 way.  Okay.  Thank you.
6         MR. FOSTER:  Thank you.
7         MR. MCCORMICK:  Thank you, your Honor.
8     (Which were all the proceedings heard.)
9                          CERTIFICATE
10    I certify that the foregoing is a correct transcript from
11 the record of proceedings in the above-entitled matter.
12
13 /s/ *SANDRA M. TENNIS*                May 22, 2023
14 SANDRA M. TENNIS, CSR, RMR, FCRR
   Official Court Reporter