IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VALERIE THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 CV 1948 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| LVNV FUNDING, LLC and | ) | |
| RESURGENT CAPITAL SERVICES, | ) | |
| L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

This Court has previously found that defendants LVNV Funding, LLC and Resurgent Capital Services, L.P., violated plaintiff Valerie Thomas' rights under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, and it granted defendants' motion to bar plaintiff from presenting evidence in support of her claim for actual damages. *Thomas v. LVNV Funding, LLC*, 642 F.Supp.3d 728 (N.D.Ill. 2022) (finding that defendants violated the FDCPA by reporting to TransUnion that plaintiff had a consumer debt that had gone into default without noting – as plaintiff had previously advised them in writing – that the debt was disputed); (Dckt. #69; Dckt. #71 (May 12, 2023 transcript) at 11-13). Consequently, the only issue remaining for the jury's determination at the forthcoming trial is what amount of statutory damages (ranging from zero to $1,000) that defendants must pay to plaintiff pursuant to the FDCPA. 15 U.S.C. §1692k(a)(2)(A).

To determine the amount of statutory damages to be awarded in this individual FDCPA case, the jury will be instructed to consider "the frequency and persistence of noncompliance by

1

the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. §1692k(b)(1). Plaintiff seeks to introduce evidence pertaining to defendants' policies and procedures in support of her claim for statutory damages. (Dckt. #88 at 1). Defendants raised an objection to such evidence in open court on December 7, 2023, seeking to "exclude all evidence of their policies and procedures and prohibit any reference to whether any person other than Plaintiff has been affected or could be affected by Defendant's conduct, policy, or procedures." (Dckt. #87 at 4).

In support of their objection, defendants assert that the FDCPA's reference to "the 'frequency and persistence factor' is limited, in an individual action, to the frequency and persistence with respect to the individual plaintiff." (Dckt. #87 at 1). Plaintiff disagrees and further argues, in the alternative, that evidence of defendants' policies and procedures is admissible because it is relevant to defendants' non-compliance with the FDCPA and the extent to which their noncompliance was intentional. (Dckt. #88 at 2-7).

**II.     ANALYSIS**

"The FDCPA was enacted by Congress 'to eliminate abusive debt collection by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection practices.'" *Kaylor-Trent v. John C. Bonewicz, P.C.*, 910 F.Supp.2d 1112, 1114 (C.D.Ill. 2012), *quoting Jenkins v. Heintz*, 25 F.3d 536, 538 (7th Cir. 1994), *aff'd*, 514 U.S. 291 (1995). Furthermore, "by providing for statutory damages and attorneys fees for successful plaintiffs, the FDCPA permits and encourages parties who have suffered no loss to bring civil actions for statutory violations." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 96 (2d Cir. 2008); *Hernandez v. Guglielmo*, 977 F.Supp.2d 1054, 1055-

56 (D.Nev. 2013) ("[T]he FDCPA provides for statutory damages and attorney's fees, so that there would be no lack of incentive for plaintiffs to pursue individual actions.") (internal quotation marks omitted); *Strange v. Wexler*, 796 F.Supp. 1117, 1120 (N.D.Ill. 1992) ("One purpose of statutory damages is to create an incentive to obey the law.")

> A. **The law is unsettled as to whether evidence of defendants' policies and procedures is relevant to show the frequency and persistence of a debt collector's noncompliance in an individual case.**

The language of §1692k(b)(1) does not specify whether evidence pertaining to the frequency and persistence of a debt collector's noncompliance is limited to evidence concerning the plaintiff in an individual case. The parties agree that the Seventh Circuit has yet to reach the issue and that the courts that have considered the question have reached divergent conclusions.

The cases that defendants rely upon have adopted the following reasoning expressed by the court in *Dewey v. Associated Collectors, Inc.*, 927 F.Supp. 1172 (W.D.Wis. 1996):

> Plaintiffs maintain that the 'frequency and persistence of noncompliance' language in § 1692K(b)(1) and (2) pertains to defendant's actions in cases other than this one and seeks to discover and prove that defendant has violated the act with respect to other consumers. Proper interpretation of the statute does not lead to this conclusion.
>
> In setting forth the factors that courts should consider in awarding statutory damages for violations of the act, § 1692k(b) makes a distinction between individual actions and class actions. Courts are to consider the 'frequency and persistence of noncompliance by the debt collector' in each type of action. In class actions, courts are to consider 'the number of persons adversely affected' as well. § 1692k(b)(2).
>
> If the term 'the number of persons adversely affected' is to have meaning, it must be something additional to the 'frequency and persistence of noncompliance.' Otherwise, the term would be superfluous and contradict the familiar statutory canon that an interpretation should give meaning to all components of a statute. Applying this canon, I find that 'frequency and persistence of noncompliance' does not pertain to actions taken by a debt collector in other cases but only to the consistency of the debt collector's actions with respect to the debtor bringing suit. If Congress had intended to address the issue of a debt collector's comprehensive business activities in individual actions, it would have included 'the number of

3

> persons adversely affected' or other similar language as a relevant factor in subpart (1) of § 1692k(b). It appears that Congress recognized the inefficiency of delving into such matters in cases where statutory damages are limited to $1,000.

*Id.* at 1175; *Salazar v. Green Square Co., LLC*, No. 1:21-CV-00542-KG-JFR, 2022 WL 1492577, at *10 (D.N.M. Mar. 16, 2022), *R. & R. adopted*, No. 21-CV-542 KG-JFR, 2022 WL 1115271 (D.N.M. Apr. 14, 2022) (citing cases); *Grubbs v. Andrews & Cox, P.C.*, No. 1:13-CV-1936-WTL-MJD, 2015 WL 5613325, at *2-3 (S.D.Ind. Sept. 22, 2015) (citing cases).

Plaintiff, on the other hand, cites a number of cases where courts have considered evidence of a defendant's conduct towards other persons in assessing the frequency and persistence of noncompliance by the debt collector in individual cases. *See, e.g.*, *Greer v. All Wheels Recovery Inc.*, No. 20-CV-130-WMC, 2020 WL 4251406, at *2 (W.D.Wis. July 24, 2020) (citing evidence of defendant's "apparent engagement in the regular business of repossession of vehicles" when awarding $1,000 in statutory damages); *Strange*, 796 F.Supp. at 1119-20 (awarding statutory damages where "isolated violation" in question "probably resulted from a mass-production approach to collection litigation."); *see also Hernandez*, 977 F.Supp.2d at 1056 ("[T]he court is unconvinced that its reading of the term 'frequency' is duplicative of 'the number of persons adversely affected.' Obviously, the 'adversely affected' assessment takes into consideration the number of persons negatively impacted. That is quite different than the 'frequency . . . of noncompliance,' which . . . may or may not have had an adverse [e]ffect, but which may still be considered redressable.").

Although the caselaw cited by defendants appears to represent the majority view of the courts that have considered this issue, the caselaw cited by plaintiff appears to better align with the Congressional purpose underlying statutory damages (namely, to "create an incentive to obey the law," *Strange*, 796 F.Supp. at 1120) by allowing consideration of evidence of a defendant's

4

policies and procedures where they arguably led to the FDCPA violation. Nonetheless, this Court need not determine which line of authority correctly interprets §1692k(b)(1) with respect to the scope of the evidence that is relevant to showing the frequency and persistence of noncompliance in an individual case. This is so because evidence of defendants' policies and procedures (as shown below) is relevant to the nature of defendants' noncompliance and the extent to which their noncompliance was intentional.

> **B.** **Evidence of defendants' policies and procedures is relevant to the nature of their noncompliance and their intent under §1692k(b)(1)**.

Plaintiff asserts that evidence of defendants' policies and procedures is relevant to the nature of their noncompliance under §1692k(b)(1) and the Court agrees. Indeed, the Court previously rejected defendants' "bona fide error" defense and expressly found that defendants' policies and procedures led to the violation while granting plaintiff's motion for summary judgment on liability:

> The [bona fide error] defense falters at the gate since defendants do not claim to have made any error at all. To the contrary, Resurgent's 30(b)(6) witness testified that plaintiff's debt was communicated to TransUnion consistently with company policy. . . . The failure to report plaintiff's dispute was not the result of a technological glitch or a mistake by an individual employee; it was the product of a policy that tolerates the risk of violating 15 U.S.C. §1692e(8) exactly as it did here. . . . [I]n this case, Resurgent's system tolerates the communication of false information in cases where disputes arrive at its doorstep at the close of its monthly reporting periods, and it lacks procedures for promptly correcting information it later discovers was false at the time it was communicated to a third party.

*Thomas*, 642 F.Supp.3d at 731 (citations omitted).

The Ninth Circuit and other courts have held that evidence of a defendant's policies and procedures and conduct towards other persons is relevant and admissible to show a defendant's intent and/or the nature of a defendant's noncompliance. See the following cases, for example:

(1) *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 953 (9th Cir. 2011) ("The district court did not abuse its discretion in concluding that the testimony of JRL's conduct in similar cases was relevant to show intent, absence of mistake, malice, willfulness, and reprehensibility. Pursuant to the FDCPA, McCollough had to prove that JRL's violations were 'intentional' to obtain the maximum amount of FDCPA statutory damages");

(2) *Webster v. ACB Receivables Mgmt., Inc.*, 15 F.Supp.3d 619, 637 (D.Md. 2014) (awarding $1,000 in statutory damages even though the actions of defendant's employees were not intentional where "the collection agency failed to maintain adequate procedures reasonably adopted to prevent the type of errors that occurred.");

(3) *Kaylor-Trent*, 910 F.Supp.2d at 1114-16 (admitting evidence of complaints from seven lawsuits brought by other individuals against defendant which alleged that defendant violated the FDCPA in the same way as plaintiff alleged to show that defendant's violation was intentional) (citing *McCollough*);

(4) *Edwards v. Niagara Credit Solutions, Inc.*, 586 F.Supp.2d 1346, 1363 (N.D.Ga. 2008), *aff'd on other grounds*, 584 F.3d 1350 (11th Cir. 2009) ("The Court finds that, based on Defendant's admission that it is company policy for callers leaving answering machine messages not to identify themselves as calling on behalf of [the defendant] or calling for the purpose of attempting to collect a debt, that Plaintiff should be awarded the maximum amount of statutory damages."); *Edwards*, 586 F.Supp.2d at 1354 ("Finally, the court notes that even if the violation was not intentional, it was at a minimum, measured and calculated. . . . Niagara has asserted that it developed its company policy after consulting legal sources, it maintains that it attempted to avoid a violation. But, Niagara deliberately cho[se] this policy, and it must face the consequences of its decision. Considering all of these factors, the court agrees with the

Magistrate Judge that a $1,000.00 award of statutory damages is appropriate.") (citation omitted);

(5) *Kersten v. Quick Collect, Inc.*, No. 1:14-CV-00668-CL, 2015 WL 1931137, at *2 (D.Or. Apr. 27, 2015), *R. & R. adopted*, No. 1:14-CV-00668-CL, 2015 WL 2412193 (D.Or. May 18, 2015) ("[T]he third factor weighs strongly in Plaintiffs' favor. Defendant has not submitted any evidence that its violation was unintentional. . . Moreover, at the summary judgment state, Defendant mounted evidence that its error was, in fact, intentional. It was Defendant's policy to leave minimal information in voice messages for debtors. In light of Defendant's current lack of opposition and its prior evidentiary submissions regarding its intent, the Court finds an award of $1,000 in statutory damages is warranted.") (citing *Edwards*); and

(6) *Kromelbein v. Envision Payment Sols., Inc.*, No. 3:11-CV-1598, 2013 WL 3947109, at *7 (M.D.Pa. Aug. 1, 2013) ("Defendant next argues that Envision's employees were simply following company policy by calling multiple times per day and hanging up after several rings, its logic apparently being that a company policy immunizes Envision from FDCPA liability. . . . If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights.").

The Court finds these decisions to be persuasive and it holds that evidence of defendants' policies and procedures is relevant and admissible to show defendants' intent and the nature of their noncompliance with the FDCPA for purposes of establishing her entitlement to an award of statutory damages under 15 U.S.C. §1692k(b)(1).[1]

---

[1] The Court notes that plaintiff has not expressed an intention to refer to any other particular person whom she believes was affected by defendants' conduct, policies, or procedures.

## CONCLUSION

In sum: for the foregoing reasons, the Court holds that evidence of defendants' policies and procedures is relevant and admissible to the determination of the amount of statutory damages that the jury may award to plaintiff pursuant to 15 U.S.C. §1692k(b)(1).

**Date: December 11, 2023**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
**Jeffrey I. Cummings**
**United States District Court Judge**