IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| VALERIE THOMAS, | § | |
| | § | |
| Plaintiff | § | |
| vs. | § | Case No. 1:21-cv-01948 |
| | § | |
| LVNV FUNDING, LLC and RESURGENT | § | Hon. Jeffrey Cummings |
| CAPITAL SERVICES, L.P. | § | |
| | § | |
| Defendants | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

**I. INTRODUCTION**

In calculating a fee award, the lodestar analysis starts with the reasonable hours expended multiplied by the reasonable hourly rate. Then, the amount is adjusted down or up depending on the circumstances of the case. The Seventh Circuit has determined that the most important factor in deciding a reasonable fee is the difference between the judgment recovered and the recovery sought. Here, not only are Plaintiff's billing records deficient, containing block-billing and billing for administrative time, but Plaintiff's success was nominal, since she recovered only 25% of the statutory damages that she sought and none of the actual damages that she sought. For these reasons, Plaintiff's fee request should be reduced substantially.

**II. FACTUAL BACKGROUND**

Plaintiff Valerie Thomas owed a debt for a Webbank Fingerhut account (the "Account") and failed to make timely payments, causing the account to go into default. (ECF No. 1 a ¶¶5 & 23.) On January 21, 2021, Thomas sent a letter to LVNV indicating that she disputed the debt (the "Letter"). (*Id.* at ¶26.) The January 21, 2021 Letter stated, among other things: "the amount reported is not accurate." (*Id.* at ¶26, Ex. A.) On February 1, 2021, via certified mail, Resurgent

1

received the Letter. (*Id.* at ¶27.) It is undisputed that the Account was first reported as disputed on March 3, 2021.

On April 12, 2021, Plaintiff filed an individual suit against Defendants alleging one violation of the Fair Debt Collection Practices Act, under 15 U.S.C. § 1692e(8) and sought statutory damages, costs and reasonable attorneys' fees. (ECF No. 1.) Plaintiff alleged in discovery that she was seeking actual damages. (Declaration of Manuel Newburger, p. 13., attached as Ex. 2.) On November 21, 2022, Judge Bucklo entered her Memorandum Opinion and Order granting Plaintiff's Motion for Summary Judgment as to liability and a trial was set for damages. (ECF No. 52.) However, in its ruling on May 12, 2023, the Court determined that Plaintiff was barred from presenting evidence of actual damages due to the failure to provide evidence of the same in discovery. (ECF No. 69.) A jury trial was conducted on December 12-13, 2023, and the jury awarded Plaintiff only $250 in statutory damages, notwithstanding her request for the maximum allowable statutory damages under the FDCPA of $1,000.

### III.  ARGUMENT

#### A.  The Lodestar Standard

The starting point for a court's evaluation of a fee request "is a lodestar analysis; that is, a computation of the reasonable hours expended multiplied by a reasonable hourly rate." *Sonrai Sys., LLC v. Romano*, No. 16 CV 3371, 2023 U.S. Dist. LEXIS 110447, at *5 (N.D. Ill. June 27, 2023); *Houston v. C.G. Sec. Servs., Inc.*, 820 F.3d 855, 859 (7th Cir. 2016), quoting *Divane v. Krull Elec. Co.*, 319 F.3d 307, 317-18 (7th Cir. 2003). Although the lodestar yields a "presumptively reasonable fee," *World Outreach Conf. Ctr. v. City of Chicago*, 896 F.3d 779, 783 (7th Cir. 2018), after the lodestar calculation, the court "may determine whether an adjustment is warranted under the case-specific circumstances." *Nichols v. Illinois Dep't of Transportation*, 4

F.4th 437, 441 (7th Cir. 2021). Additionally, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983).

The party seeking fees bears the burden of proving the reasonableness of the hourly rate and the reasonableness of the hours worked. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir.1999). If the party seeking fees meets her burden, the burden shifts to the opposing party to demonstrate why a lower rate should be awarded. *Id*. at 555. If the party seeking fees does not meet her burden, then the Court "has the authority to make its own determination of a reasonable rate." *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 640 (7th Cir. 2011) citing *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999) (where plaintiff only offered self-serving affidavits to demonstrate the market rate, the district court did not err by reducing the rate from $190 per hour to $115 per hour).

In determining an attorney's fee award, the barometer for the amount of the award is "reasonableness." This standard applies to the methodology used to calculate appropriate fees under 42 U.S.C § 1988, and by extension cases for the award of fees under the FDCPA. *Tolentino v. Friedman*, 46 F.3d 645, 65-652 (7th Cir.), cert. denied, 515 U.S. 1160 (1995). The lodestar may be adjusted upward or downward, *Altergott v. Modern Collection Techniques, Inc.*, 864 F. Supp. 778, 780-783 (N.D. Ill. 1994) (where 70% of the legal fees were incurred after defendant admitted a violation of the FDCPA, the Court reduced the lodestar amount by 50%, noting that the defendant "should not have to shoulder the entire financial burden occasioned by [the plaintiff's attorneys'] failure to make a reasonable assessment of the value of their case"). The adjustments to the lodestar may be based on 12 factors that the Supreme Court has specified in cases such as *Hensley*, and as further applied by the 7th Circuit in FDCPA cases such as *Tolentino v. Friedman*, 46 F.3d at 652.

The most important of the factors is "the degree of success obtained."[1] *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436). "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440. Plaintiffs often present multiple claims and theories for relief, each with a range of potential awards,

> involving numerous challenges to institutional practices or conditions . . . Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a prevailing party therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.

*Hensley*, 461 U.S. at 436.

After calculating the lodestar, "[t]he district court may then adjust that figure to reflect the various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher*, 574 F.3d at 856-57.

This determination of reasonableness must account for "the facts and circumstances of the underlying litigation." *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628-29 (4th Cir. 1995). In the end, the amount of any attorney's fees should bear a reasonable relationship to the nature of the defendant's violation and a court may reduce any award from the lodestar amount to properly reflect the degree of success achieved.

---

[1] "There are twelve factors that a court should consider when calculating attorney's fees: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the plaintiff's attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, at 441, 103 S.Ct. at 1943-44." *Tolentino*, 46 F.3d at 652.

### B. The Court Should Exclude Hours That Were Not Reasonably Expended

After looking at the hourly rates claimed, the Court should exclude from the fee calculation hours that were not "reasonably expended." *Hensley*, at 434. "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request any hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id*. Courts should consider their overall sense of the suit and may use estimates in calculating and allocating an attorney's time. *Vega v. Chi. Park Dist.*, 12 F.4th 696, 705 (7th Cir. 2021). The Seventh Circuit has endorsed a district court's lump-sum approach as a practical means to trim the fat from a fee application. *Id*. When billing records do not contain sufficient "detail necessary to enable the Court to determine how much time counsel devoted to non-compensable matters", the Court should make an across-the-board reduction of the overall number of hours. *Sonrai Sys., LLC v. Romano*, 2023 U.S. Dist. LEXIS 110447, at *8-9; *Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000) ("when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage."); *Johansen v. Wexford Health Sources*, No. 15-CV-2376, 2021 U.S. Dist. LEXIS 53955, 2021 WL 1103349, at *7 (N.D.Ill. Mar. 23, 2021) (applying an across-the-board percentage reduction to the overall hours to account for duplicate and excessive billing and fees sought for administrative tasks) (citing cases).

Defendants have identified the time entries to which they object. (See Group Exhibit 1.) Defendants have provided highlighted mark-ups of Plaintiff's counsel's billing time entries to help identify the time entries that are being objected to on the basis that: 1) Plaintiff's counsel are inappropriately billing for administrative tasks at attorney hourly rates; and2) Plaintiff's counsel are inappropriately block billing with vague statements of activity that make it impossible for the

5

Court or anyone else to reasonably evaluate the amount of time allocated to each task for reasonableness. Additionally, the amount of the fees requested is grossly disproportionate to the small degree of the plaintiff's overall success in this case. Accordingly, Defendants request that the Court make an across-the-board percentage reduction for these inadequate fees.

### 1. Plaintiff's request for fees for administrative time and block billing should be reduced.

Courts have determined that block-billing and administrative tasks should reduce a fee award. It is well-established that plaintiffs are precluded from recovering time billed at an attorney's hourly rate for work that could or should have been performed by a paralegal or an assistant. *See, e.g., Smith v. Altman*, 2015 U.S.Dist. LEXIS 126209, * 23 (N.D.Ill.), ("[t]he Court may not award fees at attorneys' rates for work that does not require that level of skill") (internal quotation and citations omitted); *see also Spegon*, 175 F.3d at 553 ("[T]he court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel 'on tasks that are easily delegable to non-professional assistance.'" (internal citation omitted)). If a court chooses to make downward adjustments, it may either reduce the overall award or attempt to identify specific hours that should be eliminated. [*Hensley*] at 436-37. In determining the lodestar, the court must bear in mind that a defendant is not required to pay for hours that are "excessive, redundant, or otherwise unnecessary." *Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012) (citing *Hensley*, 461 U.S. at 434). The lodestar, however, is just the starting point. *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018).

When reviewing block-billed entries, the court must consider whether the entries are "sufficiently detailed to permit adequate review of the time billed to specific tasks" and whether that time was reasonably necessary. *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008); *see Castro v. Lloyd & McDaniel, PLC*, No. 15-cv-559, 2016 U.S. Dist. LEXIS 127658, 2016 WL

6

5110046, at *8 (S.D. Ind. Sept. 19, 2016) (disallowing time for entries stating "update records on debt buyer liable for attorney," "Review materials re: potential survey expert," and "Prepare for fairness hearing"); *Thomas v. Shoshone Trucking, LLC*, No. 4:20-cv-00209-TWP-KMB, 2023 U.S. Dist. LEXIS 51283, at *25 (S.D. Ind. Mar. 27, 2023) (where entries are "vague, the court cannot estimate how much time could reasonably be attributed to these tasks, so the Court cannot determine whether the block-billed entry is reasonable.") Other courts in this circuit have reduced block-billed fees on a percentage basis or disallowed those entries altogether. *See, e.g., Heriaud v. Ryder Transp. Servs.*, No. 03 C 0289, 2006 U.S. Dist. LEXIS 10886, 2006 WL 681041, at *8 (N.D. Ill. Mar. 14, 2006) (reducing block-billed entries by fifty percent); *In re Subpoenas Issued to Danze, Inc.*, No. 05 C 4538, 12:03CV1572, 2006 U.S. Dist. LEXIS 2446, 2006 WL 211942, at *3 (N.D. Ill. Jan. 18, 2006) (reducing block-billed entries by fifty percent); *In re Wiedau's, Inc.*, 78 B.R. 904, 908 (Bankr. S.D. Ill. 1987 1987) (striking block-billed entries as non-compensable).

Here, as set forth in the attached group exhibit with red highlighting (and also copied here, but without highlighting) are examples of Plaintiff's attorneys time entries which are block-billed and which seek fees for attorneys performing administrative tasks, such as "File same," "calendar dates" and other "calendar" tasks:

Example from Great Lakes Consumer Law Firm LLC billing records (*See*, Group Exhibit 1):

| | | | | | | |
|---|---|---|---|---|---|---|
| Service | 04/12/2022 | Meet with client regarding deposition and present client for deposition. Correspond with opposing counsel regarding deposition issues, including documents from Bank of America. | 3.70 | $425.00 | $1,572.50 |
| Service | 04/13/2022 | Preparation for corporate representative deposition for both LVNV and Resurgent. Review discovery responses, available corporate disclosures, prior depositions and draft jury instructions as well as operative pleadings. Prepare outlines and exhibits. Confirm court reporter is in place. | 6.60 | $425.00 | $2,805.00 |
| Service | 04/13/2022 | Review updated and supplemental document production from Resurgent. Follow up with opposing counsel regarding same. Incorporate into deposition outline. | 1.20 | $425.00 | $510.00 |

| | Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| | 04/18/2022 | Review comments to status report from opposing counsel. Prepare final draft and file with ECF. | 0.50 | $425.00 | $212.50 |
| Service | 08/15/2022 | Preparation of motion for summary judgment, rule 56(c) statement of facts, and motion to file under seal. File same. | 13.50 | $425.00 | $5,737.50 |
| Service | 09/06/2022 | Preparation of response in opposition to Defendants' motion for summary judgment and statement of facts. Confer with co-counsel regarding same. File same. | 10.90 | $425.00 | $4,632.50 |
| Service | 04/21/2023 | Make changes to pre-trial order and jury instructions. Meet and confer with opposing counsel. Finalize documents for submission. File same. | 6.60 | $425.00 | $2,805.00 |
| Service | 04/21/2023 | Draft motion in limine and file same. Confer with counsel regarding same. | 5.40 | $425.00 | $2,295.00 |
| Service | 05/05/2023 | Preparation of response to Defendants' motion in limine. Confer with opposing counsel regarding same. File same. | 5.10 | $425.00 | $2,167.50 |
| Service | 05/12/2023 | Preparation for pre-trial conference. Travel to courthouse. Participate in pre-trial conference. Travel to home. | 6.50 | $425.00 | $2,762.50 |
| Service | 05/30/2023 | Research regarding waiver of jury trial and opposing party's right to rely on jury demand. Draft statement regarding court request to waive statutory damages and move forward on fees alone. Confer with client and co-counsel regarding same. File statement. | 3.90 | $425.00 | $1,657.50 |
| Service | 05/31/2023 | Review of transcript and minute entry order, calendar dates. | 0.50 | $425.00 | $212.50 |
| Service | 06/29/2023 | Review minute entry order, calendar dates. Multiple email exchange with opposing counsel regarding waiver of jury trial and rescheduling pre-trial conference. | 0.80 | $425.00 | $340.00 |
| Service | 07/20/2023 | Review minute entry order, calendar dates setting trial. | 0.20 | $425.00 | $85.00 |
| Service | 10/26/2023 | Review reassignment order and address issues with calendar. | 0.20 | $425.00 | $85.00 |
| Service | 10/30/2023 | Review minute entry order and calendar dates. | 0.20 | $425.00 | $85.00 |

---------------------------------

8

Example from Daniel R. Brown billing records (*See*, Group Exhibit 1):

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 4/12/21 | Preparation of Complaint for filing. Prepare first day filings. File Complaint and first day filings. | 3.5 | $450.00 | $1,575.00 |
| 4/12/21 | Filing Fee | | | $402.00 |
| 5/4/21 | Review responsive pleadings from Defendants | 0.5 | $450.00 | $225.00 |
| 6/17/21 | Prepare and file status report after conference and revisions from opposing counsel | 0.8 | $450.00 | $360.00 |
| 11/15/21 | Preparation and filing of motion for protective order, protective order and extension of time to complete discovery. | 2.5 | $450.00 | $1,125.00 |
| 11/15/21 | Prepare and file status report after conference and revisions from opposing counsel | 0.8 | $450.00 | $360.00 |

----------------------------------------------

Example from Community Lawyers LLC billing records (*See*, Group Exhibit 1):

| Date | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 10/30/23 | CC | Review Minute order, setting status hearing for 11/2/2023, calendar date | 0.20 | $335.00 | $67.00 |
| 11/2/23 | CC | Review Minute Entry, stricking trial date of 11/28/2023, and resetting it to 12/12/2023, calendar date | 0.20 | $335.00 | $67.00 |
| 11/8/23 | CC | Read, Review, & Analyze Memorandum Opinion & Order regarding Motions For Limine | 1.00 | $335.00 | $335.00 |
| 12/4/23 | CC | Review and calendar minute entry, stricking 12/6/2023, resetting it to 12/7/2023 and by 12/5/2023 submit deposition designations | 0.20 | $335.00 | $67.00 |
| 12/8/23 | CC | Strategy meeting with SM regarding Trial Brief on Statutory Damages | 1.00 | $335.00 | $335.00 |
| 12/10/23 | CC | Trial prep, review exhibits, review msj, prep notes. | 6.00 | $335.00 | $2,010.00 |
| 12/11/23 | CC | Prep client for jury testimony review documents, and previous deposition testimony with client | 3.00 | $335.00 | $1,005.00 |

(*See*, Group Exhibit 1.)

In looking at these entries, they are rife with block-billing and billing for administrative tasks, *e.g.*, "File same," "filing of," "file," "calendar date," and other "calendar" related tasks. The block-billed entries are not "sufficiently detailed to permit adequate review of the time billed to specific tasks." See *Cintas Corp.*, 517 F.3d at 469. Accordingly, Defendants request that the Plaintiff's fee request be reduced to reflect the inappropriateness of these entries.

9

### C. The Fee Award Should Be Reduced Due to the *De Minimis* Recovery or Lack of Overall Success of the Action

The Supreme Court has been clear that "we held that 'the most critical factor' in determining a reasonable fee 'is the degree of success obtained.'" *Marek v. Chesny*, 473 U.S. 1, 11 (1985), citing *Hensley*, 461 U.S. at 436. The Supreme Court further wrote "we specifically noted that prevailing at trial may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id*. In this case, Plaintiff recovered a fraction of what was sought after almost three years of litigation and ample opportunities to provide admissible evidence of actual damages that Plaintiff claimed arose from the approximate 30-days delay in reporting the Plaintiff's dispute[2] of the Account. Accordingly, Defendants believe that the objectively very low degree of success by Plaintiff in this case in the form of zero actual damages and statutory damages of only $250 out of a possible $1,000 amounts to more than (and definitively not less than) a 75% *failure* in terms of degree of success. Such a high degree of failure requires this Court to greatly reduce the amount of fees that may be recovered.

The FDCPA provides that a plaintiff may recover, "(3) in the case of any *successful* action to enforce the foregoing liability, the *costs* of the action, together with a *reasonable attorney's fee* as determined by the court." 15 U.S.C. 1692k(a)(3)(emphasis added). This fee-shifting statute provides that recovery of both costs and a reasonable attorney's fees depend upon a "successful action" to enforce the foregoing liability, *i.e.,* <u>actual and statutory damages</u>. There is no ambiguity

---

[2] The letter that gave rise to Plaintiff's claim did not say that she disputed the debt. It said that "the amount reported is not accurate." That statement was false. In response to cross-examination at trial, Plaintiff admitted under oath that there was no error in the amount of the debt because the amount reported accurately reflected reductions to the debt owed by her handful of payments towards the debt that she owes. One need only look at the criticisms of FDCPA plaintiffs and their attorneys discussed in *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504 (6th Cir. 2007) (quoting *Jacobson v. Healthcare Fin. Servs.*, 434 F. Supp. 2d 133 (E.D.N.Y. 2006)) to recognize what actually happened in this case.

that "successful action to enforce . . . liability," refers to the award of the alleged actual damages and statutory damages.³ *Dechert v. Cadle Co.*, 441 F.3d 474, 467 (7th Cir. 2006). While "success" is the threshold for a determination of whether to award attorney's fees and costs, it is the extent or degree of "success" that matters most in determining how much may be awarded by a court.

In *Farrar v. Hobby*, 506 U.S.103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the district court in a § 1983 action awarded the plaintiffs who were seeking $17 million in compensatory damages only nominal damages yet awarded plaintiff nearly $250,000 in attorney's fees. The Fifth Circuit reversed, holding that the plaintiffs were not prevailing parties entitled to fees under § 1988. The Supreme Court granted certiorari and held that a civil rights plaintiff recovering only nominal damages is nonetheless a prevailing party under § 1988. The Court, however, went on to hold that the plaintiffs, though prevailing parties, were not entitled to the fees awarded by the district court. In fact, they were not entitled to any fees at all. The Court held that before conducting the lodestar analysis, a district court faced with a petition for attorneys' fees should consider the extent of success of the litigation. "When the plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id*. (citation omitted).⁴ In fact, the Seventh Circuit has indicated that "[t]he difference between the judgment recovered and the recovery sought is the most important of the three factors." *Frizzell v. Szabo*, 647 F.3d 698, 702 (7th Cir. 2011).

Contrary to the claims of the Plaintiff, the FDCPA does not mandate a fee award in the lodestar amount. *See, e.g., Hensley*, 461 U.S. at 433; *Giovanni v. Bidna & Keys*, 255 Fed. Appx.

---

³ Of course, Plaintiff need not have made the insupportable claim for actual damages. She was the master of her own Complaint. But in making that claim, she set the bar for success.

⁴ This prevailing party analysis was further modified in *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 602-06, 121 S. Ct. 1835 (2001); *see also Dechert v. Cadle Company*, 441 F.3d 474, 476 (7th Cir. 2006).

11

124, 125 (9th Cir. 2007); *Carroll v. Wolpoff & Abramson*, 53 F.3d at 628-29. As the Court in *Carroll* noted: "If the concept of discretion is to have any meaning at all, it must encompass the ability to depart from the lodestar in appropriate circumstances. *Hensley* itself recognized that, in certain circumstances, an award in the lodestar amount may be excessive." *Carroll*, 53 F.3d at 628-29.

Courts have drastically reduced attorney's fees in FDCPA cases from the lodestar amount in cases of extended litigation with minimal recoveries. In *Carroll*, *supra*, the plaintiff prevailed on the first appeal, making what, at the time, was significant case law. On remand, the plaintiff recovered no actual damages and only $50 in statutory damages. The Fourth Circuit Court of Appeals affirmed the District Court's fee award finding that the award of $50 was "a mere five percent of the amount of statutory damages she initially sought." *Id*. at 629. The court also noted that the plaintiff had at most established only a technical violation—a failure to include a notice that the FDCPA mandated be included in every collection communication. In affirming the award, the court of appeals quoted the district court's finding that the conduct "was hardly morally culpable or otherwise deserving of anything more than a very small award of damages" and determined "In view of the statutory language, it was not an abuse of the district court's discretion to measure Carroll's success in terms of the nature of Wolpoff & Abramson's violation and the limited damage award she received." *Id*. at 629-630. The court went on to conclude, "If we were to overturn this fee award, we would over-encourage litigation alleging technical violations of this and other statutes aimed principally at collecting attorney's fees. We think the better course is to allow trial courts the freedom to engage in limited fee shifting when there has been limited success." *Id*. at 630-631.

12

In *Lucero v. Debt Recovery Attys.*, No. 19-106 JAP/LF, 2020 U.S. Dist. LEXIS 19893, at *4 (D.N.M. Feb. 3, 2020), an offer of judgment was accepted on an FDCPA violation. The plaintiff initially sought $42,492.44 for fees and costs, roughly $38,000 being fees. In applying lodestar and then *Farrar* to make adjustments to lodestar, the court determined:

> Given that Plaintiff alleged, and Defendants conceded, nothing more than a mere technical error in the wording of one letter, "one searches these facts in vain for the public purpose this litigation might have served." *Farrar*, 506 U.S. at 122 (O'Connor, J., concurring). The Fourth Circuit has remarked that "[i]n contrast to [a defendant's] technical violation of [the FDCPA], we note that other consumer protection statutes, and indeed, other provisions of the FDCPA, aim at truly abusive or deceitful debt collection, credit reporting, and similar practices. Proof of these sorts of violations may establish a foundation for larger attorney's fee awards." *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 630 (4th Cir. 1995). The Fourth Circuit concluded that the "technical" nature of the violation did not warrant significant attorney's fees. *Id*. The Court likewise believes the insignificant conduct alleged does not justify the exorbitant pricetag of this litigation.

*Lucero*, at *7. The court also determined that the case did not involve an overly complex area of the law. Because (1) the plaintiff recovered the full amount of statutory damages but determined that he could not have proved any actual damages, (2) the lawsuit served little if any public purpose, and the litigation was more protracted than necessary, the court held that the fee award should reflect that and awarded $5,000 in fees, which is roughly 13% of what was requested.

In *Cohen v. American Credit Bureau, Inc.*, 2012 U.S. Dist. LEXIS 33687, Civil Action No. 105112 (D.N. J., 2012), the court reduced the Plaintiff's fee request from $29,210.25 to $1,046.75. Even though the Plaintiff received the full statutory damages award <u>through an accepted offer of judgment</u>, the court reduced the fee award because the true purpose of the ensuing litigation was adjudged a complete failure. Plaintiff's efforts to "create new law" did not happen, and new precedent was not achieved. That court's thorough review of the law and intent of the FDCPA led

13

it to hold that the Plaintiff counsel's request for $29,210.25 was "unreasonable and contrary to the intent of the Fair Debt Act." *Cohen*, 2012 U.S. Dist. LEXIS 33687 at *11.

These cases and many others like them show that courts reduce fee awards when the success is limited according to the *Farrar* three-part test: "when a plaintiff's 'victory' is purely technical or *de minimis*, a district court need not go through the usual complexities involved in calculating attorney's fees.... Instead, it is enough for a court to explain why the victory is *de minimis* and announce a sensible decision to 'award low fees or no fees' at all." *Farrar*, at 117-118, 113 S.Ct. at 576 (O'Connor, J., concurring).

Here, after nearly three years of litigation, the Plaintiff received a jury award of only $250. Thus, she achieved zero degree of success on the claims for actual damages, which were a central and persistent allegation by Plaintiff that unreasonably prolonged this litigation.[5] As for degree of success for statutory damages, Plaintiff achieved only a 25% success as $250 is 25% of the maximum statutory award of $1,000. If Plaintiff hoped to recover perhaps only $1,000 in actual damages, the total degree of success would drop even further to only 12.5% as $250 is 12.5% of the maximum statutory award of $1,000 PLUS the hoped-for amount of $1,000 in actual damages. Said another way, if Plaintiff hoped to recover only a dollar in actual damages (a position that would be rather disingenuous), the degree of success would be only 24.97%. Since the degree of success obtained is the most important factor in determining fees, the lodestar amount should be reduced by a minimum of 75% and a maximum of 87.5% due to the poor degree of success achieved in this case. Fees in excess of 25% of the lodestar amount for Plaintiff's multiple attorneys spanning over three separate law firms are unreasonable and unnecessary.
to reflect the inappropriateness of these entries.

---

[5] In fact, this case might have settled prior to or at the settlement conference but for the plaintiff's inflated demands.

**D.    Plaintiff's Fee Petition Is Facially Deficient Because It Fails To Address the Twelve Factors A Court Should Consider**

Plaintiff's fee petition is facially deficient because it fails to present or fully discuss the twelve factors a court should consider when calculating attorney's fees: *Tolentino*, 46 F.3d at 652 citing *Hensley*, at 441.  This is a fatal flaw that cannot not be cured by untimely supplemental materials or arguments not raised in the initial petition for fees.

Defendant has attached a declaration from Manuel H. Newburger which explains his qualification for making the declaration and which discusses how, in his opinion to a reasonable degree of professional certainty, most of the twelve factors weigh against Plaintiff's fee petition. The declaration of Manuel H. Newburger is attached as Exhibit 2.

For all of these reasons the Court should allow Plaintiff a fee award of 12.5% of lodestar, and certainly no more than 25% of lodestar.

                Respectfully Submitted,
                **BARRON & NEWBURGER, P.C.**

      By:    */s/ Nabil G. Foster*
                Nabil G. Foster
                Alyssa A. Johnson
                53 W. Jackson Blvd. # 1205
                Chicago, IL  60604
                Tel.: 312.767.5750
                Fax.: 312.229.9203
                E-mail: nfoster@bn-lawyers.com
                          ajohnson@bn-lawyers.com

## CERTIFICATE OF SERVICE

I, Nabil G. Foster, an attorney, certify that I shall cause to be served a copy of the **DEFENDANTS' RESPONSE TO MOTION FOR ATTORNEYS' FEES AND CSOTS** upon the following individual(s), by deposit before 5 p.m. in the U.S. mail box, postage prepaid; messenger delivery; Federal Express; facsimile transmitted from (312) 229-9203; or electronically via email or the Case Management/Electronic Case Filing System ("ECF") as indicated, on March 14, 2024.

| | | |
|---|---|---|
| _x_ | CM/ECF | *Attorneys for Plaintiff(s)* |
| ___ | Facsimile | Seth McCormick |
| ___ | Federal Express | Great Lakes Consumer Law Firm, LLC |
| ___ | E-Mail | 73 W. Monroe St., Ste. 100 |
| ___ | U.S. Mail | Chicago, IL 60603 |
| ___ | Messenger | (312) 971-6787 |
| | | seth@glclf.com |

Michael Wood
Celetha Chatman
Community Lawyers, LLC
980 N. Michigan Ave., Suite 1400
Chicago, IL 60611
Telephone: (312) 757-1880
Facsimile: (312) 476-1362
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com

| | |
|---|---|
| Nabil G. Foster | */s/ Nabil G. Foster* |
| Alyssa A. Johnson | Nabil G. Foster |
| BARRON & NEWBURGER, PC | One of the Attorneys for Defendants |
| 53 W. Jackson Blvd. Suite 1205 | |
| Chicago, IL 60604 | |
| Telephone: 312-767-5750 | |
| Facsimile: 312-229-9203 | |
| nfoster@bn-lawyers.com | |
| ajohnson@bn-lawyers.com | |