# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **VALERIE THOMAS,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **Case No. 1:21-cv-01948** |
| | § | |
| **vs.** | § | **Hon. Jeffrey Cummings** |
| | § | |
| **LVNV FUNDING, LLC and** | § | |
| **RESURGENT CAPITAL SERVICES,** | § | |
| **L.P.,** | § | |
| | § | |
| **Defendants** | § | |

## <u>DECLARATION OF MANUEL H. NEWBURGER</u>

I, the undersigned Manuel H. Newburger, make this Declaration under penalty of perjury and state the following:

My name is Manuel H. Newburger. I am over eighteen years of age, of sound mind, and fully competent to make this declaration. I am one of the attorneys for Defendants LVNV Funding, LLC and Resurgent Capital Services, L.P., and in that capacity I have personal knowledge of the matters set forth in this Declaration. I am providing this Declaration in opposition to Plaintiff's application for an award of fees in the above-captioned case.

## QUALIFICATIONS TO MAKE THIS DECLARATION

I am a 1980 graduate of Trinity University in San Antonio, Texas, with a B.A. in history, and a 1983 graduate of the University of the Texas School of Law with a

-1-

Juris Doctor degree. I was admitted to practice law in Texas on November 4, 1983, in Colorado on October 26, 2009, in Massachusetts on November 12, 2019, and in Wisconsin on October 4, 2021. I am board certified as a specialist in consumer and commercial law by the Texas Board of Legal Specialization.

I am in good standing to practice law in Texas, Colorado, Massachusetts, and Wisconsin. My federal court admissions include the United States Supreme Court, the United States Courts of Appeals for the First through Eleventh and D.C. Circuits, all four United States District Courts for the State of Texas, and the United States District Courts for the District of Colorado, the District of Columbia, the District of Connecticut, the Northern and Central Districts of Illinois, the Northern and Southern Districts of Indiana, the District of Maryland, the District of Massachusetts, the Eastern and Western Districts of Michigan, the Eastern District of Missouri, the District of Nebraska, the Eastern and Western Districts of Oklahoma, the Western District of Pennsylvania, the Eastern and Western Districts of Tennessee and the Eastern and Western Districts of Wisconsin.

I am the Vice-President of Barron & Newburger, P.C., an Austin-based law firm with offices in ten states. I have worked for that firm and its predecessors and affiliates continuously since prior to the time I was licensed in its evolution from Barbara M. Barron & Associates to its present form. In addition to my law firm employment, for twenty-four years (from 1999 to 2022) I was an adjunct professor

at the University of Texas School of Law, where I taught consumer protection law (including the FDCPA).

I have practiced in the areas of consumer and commercial law since 1983, and my practice focuses on consumer financial services law. I am a past Chair of the Consumer Law Section of the State Bar of Texas, and I have served as Chair of both the Texas Board of Legal Specialization's Advisory Commission and its Exam Commission on board certification in consumer and commercial law. I have served as Chair and Chair Emeritus of the Fair Debt Collection Practices Act Committee of the Commercial Law League of America. In 1997, I was appointed to the Texas Supreme Court's Home Equity Foreclosure Rules Task Force, and I subsequently served on other such committees, working on revising the Texas Rules of Civil Procedure governing such foreclosures.

I am a frequent speaker at Continuing Legal Education Programs around the United States. I have been a speaker and article author at seminars on fair debt collection practices sponsored by the State Bar of Texas, Texas Tech Law School, University of Houston Law Foundation, South Texas College of Law, Oklahoma City University School of Law, University of Mississippi School of Law, the State Bar of Arizona, the State Bar of Georgia, the State Bar of Hawaii, the State Bar of Kansas, the State Bar of Missouri, the Suffolk County (New York) Bar Association, the North Carolina Creditors Bar Association, the Ohio Creditors Attorneys

Association, The Tennessee Bar, the Virginia Creditors Bar Association, various regions of the Commercial Law League of America, the National Creditors Bar, the U.S. Foreclosure Network, The National Association of Credit Management, The Conference on Consumer Finance Law, PLI, and the North American Collection Agency Regulatory Association, and I have been quoted on fair debt and consumer law issues in the *National Law Journal*, *Lawyer's Weekly USA*, *The Texas Lawyer*, and the *Wall Street Journal*.

I was the principal author of M. Newburger and B. Barron, *Fair Debt Collection Practices: Federal and State Law and Regulation* (Sheshunoff & Pratt 2002)., M. Newburger and B. Barron, *The Guide to Fair Debt Collection Practices Law in the United States* (Faulkner & Gray, Inc. 2000), and the two earlier editions of that book. I was also a contributing author and member of the Manual Committee for the Texas Collection Manual – Third Edition, published by the State Bar of Texas, and a contributing author to the Manual of Credit and Commercial Laws, 93rd Edition, (National Association of Credit Management 2002), and The Practice of Consumer Law (National Consumer Law Center).

In addition to my seminar articles, I was the author of the following published articles:

> "Unreasonable Debt Collection Practices." *Caveat Vendor*, Volume 15, No. 2, pp. 25 - 27, 1990.

"Recent Developments Under the Fair Debt Collection Practices Act." *Commercial Law Bulletin*, Volume 8, No. 1, pp. 12 - 19, 1993.

"Acceleration Notices and Demand Letters," *Consumer Finance Law Quarterly Report*, Vol. 47, No. 4, pp. 338-351, 1993.

"Better Defense Through Giving Up: Some Thoughts on Defending Fair Debt Cases." *Commercial Law Bulletin*, Vol. 10, No. 6, pp. 21 - 33.

"FDCPA Case Law Review," *Consumer Finance Law Quarterly Report*, Vol. 51, No. 2, pp. 158-169, 1997.

When Worlds Collide: Fair Debt Collection Practices Act vs. State Law." *Journal of Texas Consumer Law*, Volume 2, No. 4, pp. 122 - 125, 1999.

"Fair Debt Case Update III," *Consumer Finance Law Quarterly Report*, Vol. 53, No. 3, pp. 173-180, 1999.

"Pre-Judgment Collection of Legal Fees: A Right Without a Remedy?" *Consumer Finance Law Quarterly Report*, Vol. 59, No. 4, pp. 350-356, 2005.

M. Newburger, "Lucy, Charlie Brown, and the FDCPA." *Debt3*, Volume 22, No. 1, pp. 8 -13, 2007.

R. Canter and M. Newburger, "Common Law Immunity for Litigation Activities Under the Fair Debt Collection Practices Act." *Consumer Finance Law Quarterly Report*, Vol. 61, No. 1, pp. 29-39, 2007.

M. Newburger, "Legal Ethics Issues for Collection Attorneys – Part One." *Debt3*, Volume 23, No. 2, pp. 8 -14, 2008.

M. Newburger, "Legal Ethics Issues for Collection Attorneys – Part Two." *Debt3*, Volume 23, No. 3, pp. 8 -13, 2008.

B. Sinsley and M. Newburger, "Lucy, Her Football, and the TCPA." *Debt3*, Volume 23, No. 5, pp. 22 -25, 2008.

M. Newburger and B. Suttell, "Article III Standing -- The End of Federal Consumer Litigation." *Journal of Consumer & Commercial Law*, Volume 25, No. 1, pp. 2-8 (2021).

To the extent that I have any specialized legal knowledge it is in the areas of creditor and consumer rights. My practice, throughout the time that I have been licensed, has consisted primarily of debtor-creditor suits and consumer protection suits involving disputes over goods and services, lender liability claims, collection abuse and/or credit reporting issues. I have a "boutique" practice in consumer financial services law, and I defend and consult on the defense of such cases across the United States. I testified before a United States Congressional Subcommittee at the last oversight hearings on the Fair Debt Collection Practices Act, and I represented the Commercial Law League of America as *amicus curiae* in *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489 (1995), *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 125 S. Ct. 460,160 L. Ed. 2d 389 (2004), *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010), *White v. Goodman*, 200 F.3d 1016 (7th Cir. 2000), and *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457 (5th Cir. 1999). I represented the Debt Buyers Association (now known as RMA International) as *amicus curiae* in Case No. 00-50513, *Shawn Johnson, Individually and on behalf of all others similarly situated vs. Capital One Bank and NCO Financial Systems, Inc.*, an FDCPA case before the United States Court of Appeals for the Fifth Circuit that was settled before a decision was issued. I represented the National Creditors' Bar Association and multiple state creditors' bar associations as *amicus curiae* in *Midland Funding, LLC v. Johnson*,

-6-

581 U.S. 224, 137 S. Ct. 1407, 197 L. Ed. 2d 790 (2017). I represented the National Creditors' Bar Association and the National Association of Professional Process Servers as *amicus curiae* in support of the rehearing *en banc* of *Hunstein v. Preferred Collection & Mgmt. Servs.*, 994 F.3d 1341 (11th Cir. 2021).

My practice is almost exclusively related to consumer protection law and legal issues involving the credit and collection industry, and I mainly represent law firms, debt buyers, collection agencies, and creditors in defending and managing consumer litigation and regulatory actions and in compliance matters, from collector training to operational consulting. I have done such training and consulting across the United States and in Canada, India, and the Philippines. Although my practice, since 2007, has been exclusively on the industry side, from 1983 until the end of 2006 I represented consumers in individual and class litigation.

I am assuming for the purpose of this declaration that the court will be assessing the plaintiff's request for fees in light of the factors prescribed in *Hensley v. Eckerhart*, 461 U.S. 424 (1983) and *Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995). Those factors are addressed as follows:

## A.    The Time and Labor Required

Plaintiff's attorneys have engaged in "block billing," which substantially impairs Defendants' ability to address this factor. It is my opinion that all time listed on block billing entries should be treated as unreasonable and unnecessary, as block

billing is not a proper practice in a fee-shifting case. Block billing deprives both Defendants and the Court of the opportunity to consider the claimed time in relation to each task allegedly performed.

I acknowledge that it was necessary for Plaintiff's attorneys to try the case, but it is my opinion that this is because they made unsupported and insupportable claims of actual damages that polarized the parties. Had plaintiff's attorneys simply admitted from the outset that their client had no damages, this case might have been settleable early in the case. By claiming and seeking actual damages at the outset of this matter and subsequently refusing to concede that position throughout the development of discovery, they left Defendants with no viable options either than to fight the case or else be bullied into paying money for nonexistent damages.[1] By the time Judge Bucklo determined that Plaintiff could offer no trial evidence as to actual damages, Defendants had incurred so much in fees (and knew that they were facing so large a claim for Plaintiff's fees) that they were again left with no realistically feasible option than to try the case. It is my opinion that almost all of Plaintiff's fees could have been avoided had she not made the unsubstantiated claims for actual damages.

---

[1] This dilemma was further exacerbated by the fact that the underlying letter that gave rise to this case was based on a falsehood. Although Mr. Wood asserted that the credit reporting was not accurate, Defendant knew that it was accurate– a fact supported by Plaintiff's testimony at trial.

Furthermore, it is my opinion that the time incurred by Plaintiff's attorneys was grossly unreasonable and excessive because the evidence at trial revealed this entire case to be a claim manufactured by Community Lawyers LLC based upon a falsehood. The letter sent by that firm which forms the basis of Plaintiff's claim states, in pertinent part: "the amount reported is not accurate." However, Plaintiff's trial testimony revealed that statement to be false. Ms. Thomas admitted during cross-examination that the amount reported reflects the exact difference between her charge-off balance and the sum of her post-charge-off payments. By her own admission at trial, the amount reported was, in fact, accurate. In connection with this opinion I note that Illinois Rule of Professional Conduct 4.1 states:

> RULE 4.1: TRUTHFULNESS IN STATEMENTS TO OTHERS
>
> In the course of representing a client a lawyer shall not knowingly:
>
> (a) make a false statement of material fact or law to a third person; or
>
> (b) fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

Based upon my experience and qualifications set forth above it is my opinion that none of the time and labor incurred by Plaintiff's attorneys was reasonable or necessary, as the letter that gave rise to this case should never have been sent.[2] During

---

[2] I recognize that Mr. McCormick did not enter this case until after it was pending. I do not want to suggest that he participated in a violation of RPC 4.1.

the course of this case plaintiff wholly failed to produce any evidence that the trade line at issue was inaccurate. Plaintiff's trial testimony referenced above confirmed that the trade line was accurate.[3] Thus, the letter sent by Mr. Wood at Community Lawyers LLC made "false statement of material fact" and attempted to create a false and fraudulent credit file for Plaintiff.[4] It is my opinion, based on the experience and qualifications set forth above, that it is not reasonable or necessary to prosecute a suit that is based on a falsehood. In the decades during which I represented consumers I would not have made such a false statement on behalf of a consumer, and I would not have prosecuted a suit based upon such a false statement.

In connection with this opinion it is difficult not to note that Plaintiff's counsel could have said that she "disputed the debt" (language that would be consistent with

---

However, it is my opinion that Mr. McCormick should not have pursued this case when it was clear that his client had no evidence of inaccuracy.

[3] Plaintiff and her attorneys should be bound by their complete failure to produce evidence of inaccuracy and by Plaintiff's trial testimony.

[4] Having reviewed 720 ILCS 5/32-11, it is my opinion that Mr. Wood's conduct in falsely asserting the alleged inaccuracy would possibly meet the definition of "barratry" under Illinois law and that Plaintiff's attorneys also should not profit from such conduct. I have now defended multiple cases in which either Mr. Wood or Ms. Chatman sent letters that: (1) never used the word "dispute"; and (2) asserted inaccurate credit reporting where there was no evidence of inaccuracy, each of which resulted in litigation under 15 U.S.C. § 1692e(8). A review of the PACER records for this district reveals a substantial number of cases that appear to match that pattern. Again, while the case law may still provide a cause of action under Section 1692e(8) based upon a frivolous dispute, it is my opinion, based upon the experience and qualifications set forth above, that Plaintiff's attorneys should not be allowed to profit from such conduct.

the text of the FDCPA). Mr. Wood and Ms. Chatman have filed a substantial number of suits in this district based upon "dispute" letters that never use the word dispute. It is my opinion, based on the experience and qualifications set forth above, that the only reason to the methodology employed by Plaintiff's attorney Michael Wood is to trick potential defendants into failing to recognize a letter as a dispute and thereby manufacture litigation under the FDCPA. What distinguishes this case from many other cases brought under 15 U.S.C. § 1692e(8) is Plaintiff's trial testimony confirming under oath that the alleged inaccuracy (an incorrect balance) was demonstrably false, as Plaintiff admitted that the balance reported equaled the amount of the charged-off debt minus her post-charge-off payments. In other words, the falsity of the letter that formed the basis for this suit was known (or certainly should have been known) to Plaintiff at the moment it was asserted, and no discovery was needed to uncover the material misrepresentation. It is my opinion, in light of Plaintiff's testimony and my experience and qualifications set forth above, that the falsehood used to manufacture this litigation renders all of the fees incurred by Plaintiff's attorneys unreasonable and unnecessary. While an FDCPA case can arise from a frivolous credit dispute, it is my opinion (based upon the experience and qualifications set forth above) that her attorneys should not be permitted to profit from Mr. Wood's false representation that the credit reporting was inaccurate.

## B. The Novelty and Difficulty of the Questions

The primary issues in this case were: (1) Article III standing; and (2) liability under 15 U.S.C. § 1692e(8). Ms. Chatman has filed hundreds of cases under Section 1692e(8) in this district. Ms. Chatman is shown by PACER to be an attorney of record in 973 cases in this district, and Mr. McCormick is shown by PACER to be an attorney of record in 55 cases in this district. It is my opinion (based on my qualifications and experience set forth above) that neither of the primary legal issues in this case should have been novel or difficult for them and that this is not a significant factor to justify a fee award to them.

## C. The Skill Required to Perform the Legal Services Properly

This was not a complicated case in terms of fact or law. Nevertheless, it is my opinion, based on the experience and qualifications set forth above, that Plaintiff's attorneys failed to demonstrate a high degree of skill. First, they showed an inability to comply with Court rules. This was demonstrated by their failure to provide a computation of damages (addressed below) as required by Fed. R. Civ. P. 26. Plaintiff's initial Rule 26(a) disclosures made no mention of actual damages. The inability to follow rules was also demonstrated by showing up on the morning of the trial without a member of the trial bar, causing the Court to have to take a recess to find a way not to cancel the trial with the jury pool already present. Mr. McCormick evidenced an awareness of the requirement of trial bar counsel and of his lack of trial

bar membership, elevating the failure from accidental oversight to conscious indifference to the local rules.

Mr. McCormick also failed to demonstrate an ability to argue within the record at trial, making statements that were wholly outside the record and forcing me to object. In turn, the Court had to remind the jury multiple times that what the lawyers say is not evidence and causing potential prejudice to my client unlikely to be completely rectified by such judicial instruction.

Plaintiff's attorneys did so poor a job of witness preparation that in her deposition in this case, Plaintiff was unable to quantify any actual damages. Plaintiff's attorneys wholly failed to supplement her rule 26(a) disclosures or her deposition testimony regarding actual damages. It was only after discovery had closed that her attorneys served untimely supplemental responses to Defendants 'interrogatory 9, and even then, they failed to respond competently. The untimely supplement to Interrogatory 9 stated:

> 9. Identify the amount that Plaintiff seeks for each category of damages Plaintiff seeks.
>
> RESPONSE: Plaintiff is seeking statutory damages of up to $1,000 pursuant to 15 U.S.C. §1692k(a)(2); costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and such other or further relief as the Court deems proper.
>
> AMENDED RESPONSE: Plaintiff is seeking actual damages pursuant to 15 U.S.C. §1692k(a)(1) in an amount to be proven at trial; Statutory damages of up to $1,000 pursuant to 15 U.S.C. §1692k(a)(2);

> costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and such other or further relief as the Court deems proper

The failure of Plaintiff's counsel to quantify or produce evidence of actual damages resulted in an order *in limine* prohibiting any evidence of actual damages at trial. I have practiced law for over forty years, and in the hundreds of trials that I have done I cannot recall any other instance in which a plaintiff was similarly prohibited from offering any evidence of actual damages at trial. Such conduct by plaintiff's attorneys showed a very poor degree of skill in all phases of litigation.

Despite the passage of almost three years, Plaintiff's attorneys were unable to demonstrate a penny of damages or the slightest impact to Plaintiff's credit score. Having repeatedly represented that Plaintiff was entitled to actual damages, her attorneys demonstrated a complete lack of skill or ability to prove any such damages. Based upon my experience and qualifications set forth above it is my opinion that this factor should result in a substantial reduction of Plaintiff's hourly rate and time. I have seen lawyers billing at $200 per hour who have shown a better awareness of the rules and of the need to quantify damages, and it is my opinion, based on my experience and qualifications set forth above, that plaintiff's attorneys have not demonstrated a level of skill equal to $200 per hour, let alone more than that rate.

**D.    The Preclusion of Other Employment Due to Acceptance of this Case**

Given the lengthy timeline over which the simple discovery, motions practice, and trial took place in this matter, I do not consider this to be a significant factor.

Further, even if the time devoted to this case did meaningfully preclude Plaintiff's counsel from other employment, it is my opinion that such fact only further demonstrates their lack of skill as highlighted by their inability, over a span of almost three years, to document even a penny of actual damages.

## E.     The Customary Fee

I am aware of lawyers in this district with comparable years of experience being compensated in the range of rates requested by plaintiff's counsel. However, I am not aware of those attorneys demonstrating such little skill on the way to achieving so poor a degree of success. I therefore stand by my opinion that $200 per hour is a more than reasonable rate in light of the poor legal skill demonstrated and poor result obtained by Plaintiff's counsel in discovery and at trial.

## F.     The Amounts Involved and the Results Obtained

Based upon my experience and qualifications set forth above, it is my opinion that this factor weighs most heavily against the fees requested. Plaintiff's attorneys sought both actual damages and the maximum statutory damages available under the FDCPA. After nearly three years of litigation they received a jury award of only $250.00. Thus, they achieved zero degree of success on the claims for actual damages and only a 25% success on the claims for statutory damages.

I have handled FDCPA cases throughout the forty years that I have practiced law, and until 2007 I regularly handled individual and class claims for consumers

-15-

under the FDCPA. In all of the FDCPA cases in which I have been involved during my career, the only ones that had worse outcomes were those in which the plaintiff lost completely. Even some of those cases often had better ultimate outcomes, as the consumers were at least able to achieve settlements after their losses that were more favorable than Ms. Thomas' $250 recovery.

Because Plaintiff's counsel failed to provide a computation of damages as required by Rule 26, it is difficult to address the precise degree of success as a percentage. However, if Plaintiff hoped to recover only $1,000 in actual damages the total degree of success would be only 12.5%. If Plaintiff hoped to recover only a dollar in actual damages (a position that would be rather disingenuous), the degree of success would be only 24.97% (which is the maximum degree of success that could be attributed to Plaintiff's counsel).

It is my opinion that for the Plaintiff to have waited three years only to recover $250 is the equivalent of a loss for Ms. Thomas. Had her lawyers demanded $250 at the outset of this case, the case would have been resolved at once. Instead, their failure to recognize the trivial nature of Plaintiff's claims and their erroneous evaluation of the case served only to harm Ms. Thomas. Much of the fault lies with Mr. McCormick, as the decision to claim actual damages occurred after he took over as lead counsel for Plaintiff.

The FDCPA allows a *maximum* of $1,000 in statutory damages. It is my opinion, based on the experience and qualifications described above, that the failure of Plaintiff's attorneys to recognize that not every case is worth the maximum and their insistence on pursuing actual damages for which they had no supporting evidence[5] unreasonably and vexatiously multiplied these proceedings and caused the fees that they seek. Those fees were almost entirely avoidable had Plaintiff's attorneys not made unjustifiably inflated demands.

**G. The Time Limitations Imposed by the Client or by the Circumstances**

This case lasted for almost three years. It is my opinion, based on the experience and qualifications described above that this is not a significant factor in this case.

**H.      The Nature and Length of the Professional Relationship with the Client**

Based upon the experience and qualifications described above it is my opinion that no evidence in this case suggests that this is a significant factor.

**I.      The Experience, Reputation, or Ability of the Attorney**

I am familiar with the ability and reputation of Ms. Chatman, as she has been an adversary in multiple cases. In two of those cases she was subjected to monetary

---

[5] Of course, if there was any supporting evidence of actual damages then the failure to produce it and secure sponsoring witnesses was malpractice on the part of plaintiff's attorneys that should negate any fee recovery. That, too, is an opinion that I express based on the experience and qualifications described above.

sanctions by the court. One was a case before Judge Ellis in which she was sanctioned after failing on multiple occasions to produce a plaintiff for deposition. In the other, she was sanctioned by Judge Sam Sparks for noncompliance with an order and unethical conduct. Neither of those orders were appealed. Despite having filed over 900 cases in this district Ms. Chatman was still, as of the start of the trial in this case, not a member of the Court's trial bar. I am familiar with her reputation in the legal community and it is not one for competence, skill, or professionalism.

I know of nothing negative about Mr. McCormick's reputation. I have had no reason to question his ethics or professionalism. However, as described above, the ability of both of Plaintiff's attorneys is seriously in doubt. Mr. McCormick showed an inability at trial to argue within the record. Plaintiff's attorneys demonstrated either an inability to identify and evaluate actual damages or an inability to prove such damages. The ability to document and prove alleged damages is a basic legal skill that I would expect of a first year attorney. It is my opinion, based on the experience and qualifications described above, that the skill demonstrated by Plaintiff's attorneys in this case is inconsistent with the rates that they are seeking and is more consistent with a rate of no more than $200 per hour.

## J.   Whether the Fee Is Fixed or Contingent

It is my understanding that this case was a contingent fee matter. However, I am aware of the case law stating that the contingent nature of a fee is not a basis for

enhancement. Based on the experience and qualifications set forth above it is my opinion that this is not a significant factor.

**The Reasonable Fees for Plaintiff's Attorneys**

Based on the experience and qualifications set forth above and the factors addressed above it is my opinion that the reasonable hourly rate for plaintiff's attorneys in calculating their "lodestar" is $200.00 per hour at most. Furthermore, based on the experience and qualifications set forth above and the factors addressed above it is my opinion that once the Court calculates the lodestar amount it should be reduced by a minimum of 75% and a maximum of 87.5% due to the poor degree of success achieved in this case and the poor degree of skill shown by Plaintiff's attorneys. It is further my opinion based on the experience and qualifications set forth above and the factors addressed above that fees in excess of 25% of the lodestar amount for Plaintiff's attorneys is both unreasonable and unnecessary.

The opinions set forth above are ones that I hold to a reasonable degree of professional certainty.

I declare under penalty of perjury that the foregoing matters are, within my personal knowledge, true and correct.

Signed this 14th day of March, 2024.

/s/ *Manuel H. Newburger*
Manuel H. Newburger